IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**JAN 20 2016**

ARTHUR JOHNSTON
BY_____ DEPUTY

DAPHINE DOREENE ALFORD                                   PLAINTIFF

VERSUS                          CIVIL ACTION NO.: 1:16CV 19 LG-RHW

THE CITY OF WIGGINS, MISSISSIPPI;
MAYOR JOEL T. MILES;
WIGGINS CHIEF OF POLICE MATT BARNETT;
WIGGINS POLICE OFFICERS RANDY VINSON;
DOUGLAS MCBRIDE AND
OFFICERS JOHN DOES 1-5;
ALL IN THEIR OFFICIAL
AND INDIVIDUAL CAPACITIES                                 DEFENDANTS

## COMPLAINT

### PLAINTIFF REQUESTS A TRIAL BY JURY

### PREAMBLE

COMES NOW the Plaintiff, DAPHINE DOREENE ALFORD, by and through her undersigned Counsel, James Bailey Halliday, Attorney and Counselor at Law, and files her Complaint for injurious and gross deprivation of her civil rights for excessive use of force, false arrest, false imprisonment and other improper abuses resulting in personal injury and other resultant and related damages, against these Defendants and in support hereof, respectfully submits the following to this Honorable Court:

### INTRODUCTON

This is a Federal Complaint founded in the gross violation of certain civil rights afforded to and protecting Ms. Daphine Alford, a mature woman of African-American ancestry and a member of the Black Race, under 42 U.S.C. § 1983 and related statutes set forth below, wherein she was illegally detained, falsely arrested, intentionally injured,

1

choked and subsequently abused after she was stripped of all her clothing by two White Wiggins Police Officers; sprayed point blank with Pepper Spray, and then left in a small holding cell and forced to use filthy toilet water to try to decontaminate herself from the painful and gagging effects of the burning chemicals.  If this was not enough to suffer, she was wrongfully imprisoned for thirty-three (33) days based on Wiggins Police Officers filing false felony charges against her.

## HISTORICAL BACKGROUND
## COMMUNITY REPUTATION

The City of Wiggins Police Department is almost all white.  The Wiggins Police Department has a well-known community reputation of racial bias, animus and abusive actions towards minorities that has existed for years.  This racial bias, animus and abuse extends to any 'person of color', especially African-Americans or other persons considered black, and even to any white person who may be friends of, have a relationship with, or be related to any person of color. This bias, animus and abuse also extend to anyone who might otherwise be in a minority status including persons mentally and/or physically handicapped or disabled.

## CITIZENS' CONTINUING COMPLAINTS

The Minority Community of Wiggins has repeatedly complained, both officially and unofficially, of their improper treatment and abuse at the hands of Wiggins Police Officers. Some of these complaints have been made directly to the Chief of Police, Matt Barnett and to Mayor Joe Miles and to their predecessors in office.  However, little if any official or other tangible action has ever been taken to effectively curtail the continuing abuses of minorities by these white Wiggins Officers.

2

**A DOCUMENTED SERIES OF CONTINUING COMPLAINTS OF POLICE ABUSE**

### ASSAULT OF A DISABLED AND PARTIALLY PARALYZED
### WHITE MAN WITH INTERRACIALLY MARRIED FAMILY

1.      Shortly before the Plaintiff in this cause, Ms. Daphine Alford, was assaulted, injured and abused, three Wiggins Police Officers dragged a disabled and partially paralyzed white man, Jack Smith, Jr. out of the courtroom of the Wiggins Municipal Court after his conviction and assaulted him with other officers in the hall. Mr. Smith had his right arm in a medical sling and his sister had informed the court when she testified during his trial that he was painfully disabled to the extent that his right arm and right shoulder were significantly and permanently impaired and even painful to move and/or be touched. Regardless, after his conviction (during which he and his sister both testified that the officers involved where "liars"; i.e. had perjured themselves by giving false testimony during Mr. Smith's criminal trial), Mr. Smith's disabled right arm and shoulder were forcibly grabbed by an officer and he fell to the floor in apparent agony. He was then partially carried and/or dragged from the courtroom into a nearby hallway where he was rammed and shoved repeatedly into a concrete wall, choked, strangled and painfully man-handled. After this vicious assault by at least six officers, Mr. Smith was transported to the emergency room for medical care.

2.      When the assault occurred, persons in the courtroom could clearly see what happened to Mr. Smith and could hear Mr. Smith loudly crying out in abject anguish and pain while begging the officers to stop hurting him.  Regardless, no officers took any action to stop and Chief Barnett did not take any subsequent action to hold anyone accountable for what happened to Mr. Smith.  In fact, after Mr. Smith formally complained concerning his abuse and notified city officials of these events and his resultant injuries, Wiggins police

Officers began harassing him, his sister and family.  Mr. Smith and his family are friends with members of the Black Community. His sister, Cuppie Smith Day, is married to a man of African-American ancestry and they have three bi-racial children together.

3.      Mr. Smith, because his sister was interracially married and because he and his family are friends with members of the African-American/Black Community and because he is clearly disabled, was a 'prime target' for the historical type of racially biased policing and abuse by the Wiggins Police Department.

4.      Mr. Smith subsequently filed a Federal Complaint concerning his abuse, injuries and resultant permanent disabilities in the Federal District Court, Southern District, Southern Division styled: *Jack R. Smith, Jr. v. City of Wiggins, et al.* Cause No. 1:14cv26HSO-RHW.  That case went to trial in December 2015 and was settled after two days of proceedings before a federal jury.

5.      None of the officers who participated in the injurious assault on Mr. Smith were disciplined.

6.      The injurious and unprovoked actions against Mr. Smith were recorded on video.

7.      Chief Matt Barnett testified in Mr. Smith's federal case that he was aware of what had happened shortly after the incident and had seen both the courtroom surveillance video and a cell phone video of some of the events in the hallway and 'affirmed' under oath the actions of his officers (dragging a disabled man out of the courtroom and injuriously manhandling him in the hallway) and being in accordance with the policies and procedures of the Wiggins Police Department.

4

**ASSAULT OF DISABLED WHITE WOMAN STOPPED IN BLACK SECTION OF TOWN**

1.     Most recently, a disabled white woman in her sixties, Mrs. Elaine Breland, with Native American ancestry was stopped for alleged traffic violations in the main minority neighborhood of Wiggins.  The vehicle she was riding in had a clearly visible officially state issued disability placard hanging from her vehicle's rear-view mirror. Regardless of her infirmity and age, Mrs. Breland was pulled from her vehicle and according to eye-witnesses, 'roughed up' and otherwise abused by a number of white Wiggins officers. She was arrested on suspicion of driving while intoxicated and taken to the Stone County Correctional Facility where she was later assaulted by a Wiggins Police Officer, Adam Dedeaux, resulting in serious and significant injury requiring emergency medical care and subsequent surgical repair and treatment. The Wiggins Police officer who assaulted her at the Stone County facility was not disciplined. After Ms. Breland's husband, Alex, personally complained to Chief Matt Barnett about this vicious assault on his wife, Chief Barnett stated that his officer had "done nothing wrong" and had otherwise acted correctly in his use of force asserting that it was Mrs. Breland who had attempted to assault his officer who then properly defended himself from her assault.  Chief Barnett had reviewed a video of the incident and therefore he knew the truth of what had clearly occurred and yet he still denied his officer had done anything wrong and denied that his officer's injurious assault of Ms. Breland was improper and completely unjustified. Forensic evidence, in the form of a video recording, shows just the opposite; that the Officer's striking of Ms. Breland was an intentional and malicious assault by use of excessive and unjustified force that resulted in severe injury as the video depicts copious amounts of

blood streaming down Ms. Breland's face onto her clothes, shoes and even the floor immediately after the assault.

2.      After this vicious and unprovoked assault, the Wiggins Officer, Adam Dedeaux, was allowed to accept a promotion to attend the State of Mississippi Highway Patrol Academy, Upon his promotion, he was publically praised by Chief Barnett as being the type of officer that the Wiggins Police Department is proud of and similar words to that effect.

3.      Compelling Video Evidence, both official and unofficial, exists documenting all three above described incidences.  These videos support this complaint as evidence of the City of Wiggins continuing custom, habits, practice, pattern and unofficial but approved policy of excessive, unreasonable, unnecessary and injurious use of force against minorities, friends of minorities and/or disabled persons and others stopped in minority sections of Wiggins.

**GOOD FAITH EFFORT TO RESOLVE CLAIMS IGNORED BY CITY OF WIGGINS OFFICIALS**

Ms. Alford, through her designated counsel, has attempted in a good faith and patient effort to resolve her claims for physical, mental and related injuries.  On numerous occasions, she has officially and unofficially contacted officials of the City of Wiggins, both elected and appointed, including the Mayor and the City Attorney.  For over a year, Ms. Alford's Counsel has provided detailed information and video documentation concerning Ms. Alford's assault and resultant injuries.  These efforts have either been ignored or rebuffed by City Officials.  Therefore, according to the City of Wiggins' elected and appointed officials and other designated representatives and agents, her complaints are relatively insignificant and unimportant.

6

## BLACK LIVES MATTER BUT NOT IN WIGGINS, MISSISSIPPI

1.      It is patently evident, from the response of the city officials of Wiggins, both elected and appointed, and their designated agents, that if a female member of the African-American/Black Community, is abused, injured and defiled by the city's white police officers, that it really doesn't matter.

2.      None of them have ever denied what happened to Ms. Alford; that she, a Black Woman, was falsely arrested, molested, man-handled, intentionally injured, choked, stripped naked, insulted and then when she protested what the white male Wiggins Officers had done to her, maliciously sprayed with a painful burning liquid chemical and then locked nude in a small jail cell without any means of stopping the excruciating painful burning upon her upper body, face, eyes, nose and mouth; except to attempt to alleviate her pain by use of dirty contaminated water in a jail cell commode.

3.      By intentionally ignoring her legitimate complaints, they confirmed that the loss of her dignity, her personal worth as a woman of color, a Black Woman, does not matter.  Based on the treatment of Ms. Alford after she complained, it is clear that the unofficial condoned policy is that you can be falsely arrested, abused, injured, choked, stripped naked, humiliated and dehumanized in Wiggins, Mississippi and even falsely imprisoned and if you are Black- it really doesn't matter- because you are a minority member of the community.

4.      What happened to Ms. Alford, and as importantly how she was treated afterwards, is evidence of the callous attitude of the officials running the City of Wiggins and its police officers that not only is the abusive violation of the civil rights of its minority citizens tolerated but even condone.

7

5.     Jack Smith, Jr. whose injuries and abuse by Wiggins Officers occurred two (2) days before the assault on Ms. Alford (by two of the same officers McBride and Vinson) also formally and officially complained to City of Wiggins Officials including the Chief of Police, Mayor and City Attorney and his complaints were also ignored by them.

## SHORT STATEMENT OF THE BASIC FACTS

1.     On or about the late evening of January 24, 2013 in the small town of Wiggins, Mississippi, Ms. Daphine Doreene Alford, a United States citizen of obvious African American ancestry and of the Black Race, was illegally, falsely and improperly stopped, seized, searched, arrested, handcuffed, man-handled, intentionally injured, choked and subjected to dehumanizing and brutal treatment at the hands white on-duty police officers employed by the City of Wiggins Police Department.

2.     With both hands handcuffed behind her back, Ms. Alford was intentionally slammed face first down into a concrete walkway injuring her body, face and teeth, causing her great fear, pain, bleeding and a concussion.

3.     She was then dragged into the Stone County Correctional Facility, viciously choked by Officer Vinson, and taken into a small jail cell, forcibly held down and stripped of all her clothing, sprayed with pepper spray while nude, and made fun of with degrading and dehumanizing comments.

4.     After Ms. Alford was pepper sprayed, she was not decontaminated but locked in the small jail holding cell where the sink faucet was not working properly. As no one decontaminated her and as the sink faucet was basically broken, she was forced to use the filthy toilet water inside the bowl (the sink faucet was not working properly) in an attempt

8

to alleviate the incredibly intense and painful burning effects of the pepper spray over her face and naked upper body.

5.       The arresting white Wiggins officers subsequently filed false criminal charges against her alleging she had assaulted them (two counts of Felony Assault of a Law Enforcement Officer) when in fact they had assaulted her.  This caused Ms. Alford to be wrongfully incarcerated and remain in jail for thirty-three (33) days.

## PRELIMINARY STATEMENT OF CLAIM

1.       This is a Federal Civil Rights lawsuit, claim and action brought under 42 USC § 1983, 42 USC § 1985, and 42 USC § 1988 and under the protections, privileges and provisions afforded the Plaintiff, DAPHINE DOREENE ALFORD, a United States citizen of African-American ancestry and the Black Race and any similarly situated citizen under the Due Process Clause of the Fourth Amendment to the United States Constitution, and the Fourteenth Amendment to the United States Constitution for:

1.       False detention and false arrest;

2.       Improper touching of her person during arrest and custody;

3.       Excessive use of unreasonable, unwarranted and unnecessary injurious force against her by a white Police Officer of Wiggins, Mississippi, while acting under color of law, resulting in significant and permanent injury;

4.       The intentional violation of her person by subjecting her to degradation, humiliation, terror, extreme emotional distress and mental anguish, racial slurs, psychological rape and molestation of her person by forcibly and painfully holding her down, stripping off her clothing, closely observing her completely naked person and by the inappropriate touching of her person;

9

5.      Participating in the spraying of her while naked with pepper spray and then not decontaminating her;

6.      Intentionally leaving her locked naked in a small jail holding cell forcing her to use a dirty toilet bowl and the toilet's unsanitary water in an attempt to decontaminate herself of the painful burning of the pepper spray;

7.      And by filing false felony criminal charges against her resulting in a lengthy period of unwarranted incarceration.

## FACTUAL BASIS OF COMPLAINT

### FALSE ARREST

1.      On or about the late evening of January 24, 2013, Ms. Alford, a United States citizen of readily apparent African-American ancestry and the Black Race, was illegally detained and falsely arrested by two male Caucasian (white) officers on duty with the City of Wiggins Police Department, Officer Randy Vinson (a Field Training Officer) and Officer Douglas McBride (a Reserve Officer).  At the time of her initial arrest, she was merely standing on a city street corner in Wiggins, Mississippi conversing with a male companion (also African-American ancestry and the Black Race). She was not a suspect, not acting suspiciously and was not observed committing any criminal act.  Her male companion was not arrested or otherwise detained.

### IMPROPER SEARCH OF HER PERSON BY MALE OFFICER

1.      After her male companion was ordered to leave the scene, the officers Vinson and/or McBride crudely, improperly and illegally searched Ms. Alford with the improper touching of her person during which the officers allegedly found narcotic paraphernalia.

They roughly manhandled her, handcuffed her and forced Ms. Alford into the back of City of

Wiggin's police vehicle.

### EXCESSIVE USE OF FORCE RESULTING IN INTENTIONAL INJURY

1.      After her arrest, Ms. Alford was taken to the Stone County Correctional

Facility.  While handcuffed (with both hands behind her back) and being escorted into the

jail by Officer Randy Vinson intentionally tripped and twisted her off-balance causing her to

unexpectedly fall forward, face first, directly into the pavement with the blunt impact

injuring her head, face, teeth and body.  She has no way to lessen or prevent the impact

because her hands were restrained behind her. She began to bleed from her mouth and

suffered the immediate effects of a concussion.  The two arresting officers, Randy Vinson

and Douglas McBride, then dragged her into the Stone County Correctional Facility while

she loudly cried out from the intense pain repeatedly shouting in anguish, "What have you

done to my teeth" and/or similar words to that effect. Her cries of pain and anguish were so

loud that the interior video camera at the jail recorded her screams and cries even while

Ms. Alford was still outside in the Sally Port area.

### DEGRADATION, HUMILIATION AND FEAR ON THE JAIL CELL FLOOR

1.      Subsequently, she forced down onto the floor in the jail and viciously choked

by Officer Vinson and then manhandled into a small jail cell where she was further

brutalized by Officer Vinson.  Officer Vinson forced Ms. Alford down onto the cell floor and

held her down (by kneeling directly on her face, jaw and neck), then helped strip off her

clothes including all her underwear.   Officer Vinson, wearing surgical style gloves,

inappropriately touched Ms. Alford's nude person while the other Wiggins officer watched.

11

2.     Before Ms. Alford was manhandled into the cell and abused, a young white blond female, fully clothed in civilian attire (not jail clothes) was politely escorted out of the jail cell and after being told to stand against a nearby wall, while Ms. Alford was being abused on the floor, was again politely escorted through a nearby door and down an adjacent hallway.  This young lady was not handcuffed nor touched but merely given verbal instructions on what to do.

3.     As Ms. Alford lay naked, helpless, and completely vulnerable and being manhandled and brutalized by Officer Vinson, she was crying out in pain, fear and for help.

4.     She repeatedly cried out in pain shouting "Get off my face" and/or similar words to that effect.

5.     Both male and female Corrections Officers with the Stone County Sheriff's Department were present and either observed and/or participated with Officer Vinson in stripping off Ms. Alford's clothing.

6.     Officer McBride was also present closely observing Officer Vinson's actions and Ms. Alford's degradation and humiliation while assisting and holding open the jail cell door.

7.     When Ms. Alford was let up from the floor, she saw Officer Vinson wearing blue surgical gloves and realized he had stripped her clothes off and inappropriately touched her.  She began to protest what had just happened to her and asking the female Corrections Officers how they could let a male officer strip off her clothes and touch her.

8.     Ms. Alford, rightfully outraged at what happened to her, continued to protest and tried to force the male officers present to quit looking at her and leave the jail cell. She continued to protest and used a light metal tray to cover herself but ended up completely

nude just outside the jail cell opening where she was surrounded by numerous white male and female officers. However, the indignities and injuries did not stop even then as Officer Vinson and McBride left the area of the jail (where they were initiating the false charges against Ms. Alford) and went to where Ms. Alford was protesting what they had done to her. When she saw Officer Vinson staring at her she became completely emotionally overcome and outraged by what he had just done to her. A Corrections Officer then sprayed pepper spray Ms. Alford in the face and body even though she was nude, required medical attention for her injuries and was not a threat to anyone.

9.  After she was pepper sprayed, she was not decontaminated from the spray but locked in a small holding cell with only a faulty water faucet and a dirty jail toilet.

10.  Ms. Alford did not receive any care for the injuries to her face and teeth.

11.  She attempted to use a sink in the cell but the faucet was inoperable so she had to use a dirty cell commode's unsanitary toilet water in an attempt to decontaminate herself and alleviate the painful burning of the pepper spray in her eyes, face, nose, mouth and nude body.

12.  After she was locked up in the small cell, she repeatedly cried out and asked for help and assistance but her requests were intentionally ignored by the two Wiggins Officers outside completing the paperwork for the false felony charges against her.

13.  Even though the two Wiggins Officers could clearly hear Ms. Alford's pleas for assistance and help and hear her gagging and moaning and her suffering from her injuries and the pepper spray, the two Wiggins Police Officers intentionally ignored her while they remained at a desk nearby writing up false criminal charges against her. At one point they can be heard laughing about what had just happened.

13

14.     All these described events were contemporaneously recorded by surveillance cameras located within and about the Stone County Correctional Facility with clear video and audio.

## EXTREME EMOTIONAL DISTRESS AND MENTAL ANGUISH

1.     The reprehensible actions of the two police officers involved, Vinson and McBride, clearly evidence a conscious intent to purposefully inflict the highest degree of psychological fear and terror upon Ms. Alford by pushing her from behind and tripping her when both her hands were handcuffed behind her back causing her to body-slam head and face first into a concrete walkway causing extreme fear, shock, pain, bleeding from her head and mouth and causing a concussion.

2.     Officer Vinson did this not only to intentionally injure her but also to disorient her and purposefully instill fear, shock and terror to gain further control over her for what they intended to do next.

3.     Officer Vinson did this to make it 'appear' that she was somehow 'combative' or otherwise resisting arrest to any other law enforcement/correctional officers present.

4.     After body-slamming Ms. Alford 'face first' into the concrete causing a concussion, they dragged Ms. Alford into the jail hallway, viciously choked her and then forced her into a small jail cell.

5.     Once inside the cell, Officer Vinson (assisted by McBride) continued his reprehensible actions by forcibly and painfully holding Ms. Alford down, placing his knee and body weight on her face/jaw/neck, while she struggled and screamed for help shouting "Get off my face" and forcibly stripping off all her clothes until she lay naked underneath him.

14

6.     They forcibly stripped her for the purpose and intent of terrorizing and instilling the highest level of fear possible within Ms. Alford.

7.     While stripping off her clothes and underwear dehumanizing and degrading comments were made.

8.     Officer Vinson was wearing surgical/medical examination type latex gloves.

9.     Officer Vinson improperly touched and otherwise inappropriately placed his hands on Ms. Alford while she was nude.

## THE ACTIONS OF OFFICERS VINSON AND MCBRIDE HAD NO LEGITIMATE LAW ENFORCEMENT PURPOSE

1.     The actions of Officer Vinson and McBride had no legitimate law enforcement purpose or reason in forcibly stripping off Ms. Alford's clothing and undergarments.

2.     She was not a threat to the officers.

3.     She was not a threat to herself.

4.     No examination of her person of any type had been authorized.

5.     No examination of her person of any type was otherwise warranted.

6.     Her clothing and undergarments were not evidence of any type.

## VIDEO EVIDENCE SUPPORTING HER COMPLAINT

1.     All of the above recounted facts at the jail were recorded by Stone County surveillance cameras.

## FALSE CRIMINAL CHARGES

15

1.      Ms. Alford was falsely charged with misdemeanor charges.  Significantly, she was also falsely charged with two separate counts of Felony Assault on a Police Officer after her assault and brutalization in the jail cell.

2.      She has not been prosecuted on the alleged misdemeanor charges and they are now stale and cannot be prosecuted.

3.      She has not been indicted by a Grand Jury on her false felony charges of Assault on a Law Enforcement Officer.

4.      The officers who sponsored these false charges, Vinson and McBride, are no longer with the Wiggins Police Department.

### FALSE IMPRISONMENT

1.      Based on these false misdemeanor and/or false felony charges, Ms. Alford was falsely imprisoned from the date of her arrest of January 24, 2013 until February 26, 2013, thirty-three (33) days later until she was able to obtain her release without the assistance or acquiescence of the City of Wiggins or any of these Defendants.

### PUBLIC DEGRADATION, EMBARASSMENT AND HUMILIATION

1.      Based on credible information and good faith belief, her video (the one of Ms. Alford nude) is believed to have been subsequently viewed by an unknown number of Wiggins Police Officers.

2.      While in jail on these false charges, Ms. Alford illicitly lost her right to be free and suffered unjust and unwarranted punishment as a prisoner, and endured embarrassment, humiliation, dehumanization, deprivations and degradation.

3.      While in jail on these false charges, Ms. Alford was required to appear in public as a prisoner in 'jail clothes' handcuffed and shackled.

16

**TERMINATION OF OFFICER VINSON AND RESIGNATION OF OFFICER MCBRIDE FOR**

**DISROBING A FEMALE DETAINEE**

1. Chief Barnett terminated Officer Vinson shortly after his actions described herein.

2. Officer McBride, as a reserve officer, was allowed to resign for assisting Officer Vinson in disrobing Ms. Alford.

3. According to Chief Barnett's sworn testimony he terminated Officer Vinson for violating departmental policy by a male officer disrobing a female detainee.

**AFFIRMATION OF OFFICER VINSON'S AND OFFICER MCBRIDE'S OTHER ACTIONS**

**AGAINST MS. ALFORD INCLUDING USE OF FORCE BEING IN ACCORDANCE WITH**

**POLICY AND PROCEDURE**

4. Importantly, Chief Barnett also testified that Officer Vinson was not terminated or otherwise disciplined for his actions for:

   a. Detaining Ms. Alford;

   b. Arresting Ms. Alford;

   c. Injuring her when bringing her into the jail;

   d. Injuring her when in the jail;

   e. Filing criminal charges against her.

5. Chief Barnett "affirmed" these and related actions against Ms. Alford.

6. Chief Barnett, testifying as a FRCP 30 (b) (6) representative for the City of Wiggins, in *Jack R. Smith, Jr. v. City of Wiggins, et al.* Cause No. 1:14cv26HSO-RHW, stated that except for the actions of Officer Vinson in being a male officer disrobing a female detainee, Officer Vinson's other actions (including his use of force) (including the filing of criminal charges) were in accordance with the City of Wiggins Police Policy,

17

Procedure and Departmental Regulations. Chief Barnett also testified concerning the use of force against Jack Smith, Jr. which had occurred just days before the abuse of Ms. Alford and "affirmed" the actions of his officers concerning Jack Smith, Jr. Importantly, two of those officers were Vinson and McBride. Chief Barnett also testified concerning the use of force regarding Mrs. Elaine Breland and again "affirmed" his officer's actions employing injurious force against Ms. Breland as being in accordance with departmental policy.

## RETALIATION FOR COMPLAINING

1. After Ms. Alford complained of her abuse to investigating law enforcement officials with the Stone County Sheriff's Department, members of the Wiggins Police Department initiated falsehoods and rumors in Ms. Alford's neighborhood and community to discredit her and retaliate against her. This spreading of false information that she was "a snitch" and was "cooperating" with police against local drug dealers and users resulted in threats being made against her and warning to "Get out of town." Consequently, Ms. Alford was forced to move and leave the Wiggins area for her personal safety. She has been unable to return costing her the loss of a relationship and employment.

## JURISDICTION OF THE COURT

1. This Honorable District Court has original jurisdiction under 28 U.S.C. § 1331 Federal Question for all civil actions arising under the Constitution of the United States and 28 U.S.C. § 1343 to redress deprivations, under color of state law, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States and to recover damages or other relief under any Act of Congress

providing for the protection of civil rights.  This is a Complaint brought against the Defendants, jointly and severally, for the intentional violation of liberties secured, protected and guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and by the applicable Federal Statutes prohibiting such deprivations, more particularly, 42 U.S.C. § 1983, § 1985 and § 1988 wherein your Plaintiff is seeking to obtain a judgment for all damages, including all allowable costs of her suit and an award of reasonable attorney's fees, suffered and sustained by the Plaintiff, for the egregious acts committed against her under color and authority of law, resulting in her significant and serve injurious deprivations and damages.

## VENUE

1.     The filing of her Complaint in the United States District Court for the Southern District of Mississippi, is proper pursuant to 28 U.S.C. § 1391 (b) as a substantial part or all of  the events or omissions giving rise to the claim occurred in or about Stone County, Mississippi, which is part of her Court's jurisdictional district and division.

## PARTIES TO THE LAWSUIT

### PLAINTIFF

1.     Plaintiff, DAPHINE DOREENE ALFORD, is a citizen of the United States of America of African-American ancestry, is a member of the Black Race and currently resides in the southern area of the state of Mississippi.

### DEFENDANTS

19

1.     Defendant, the City of Wiggins, Mississippi, is a political subdivision of the State of Mississippi, within Stone County, and is the entity having ultimate authority, responsibility and control of and for the oversight, decisions affecting and funding of the Wiggins Police Department, including the authorization of and for its force of sworn police officers. As such, the City of Wiggins is ultimately responsible for all local policies, procedures, practices, decisions and customs employed by its law enforcement officials, supervisors and officers, including also the ultimate responsibility for the proper hiring, training and supervision of all sworn Police Officers acting under their authority and the color of law. Defendant may be served with process by lawfully affecting same as authorized by law and the applicable rules of this Court.

2.     Defendant, Joel T. Miles, is the duly elected Mayor of the City of Wiggins, and may be served at his office within City Hall, 117 First Street N, Wiggins, Mississippi, 39577 or where he may be found.

3.     Defendant, Matt Barnett, was at the time of Ms. Alford's injurious assault, and believed to still be, the lawfully appointed Chief of Police for the City of Wiggins and may be served at the Wiggins Police Department, 303 First Street S, Wiggins, Mississippi 39577 or where he may be found.

4.     Randy Vinson was one of the Wiggins Police Officers who assaulted and abused your Plaintiff, as set forth above and below, and may be served with process by lawfully affecting same where he may be found as authorized by law and the applicable rules of this Court.  Officer Vinson was a full-time officer and designated as a Field Training Officer (FTO) for the Wiggins Police Department when these injurious events occurred.

4.      Defendant, Douglas McBride, was one of the Wiggins Police Officers who assaulted and abused your Plaintiff, as set forth above and below, and may be served with process by lawfully affecting same where he may be found as authorized by law and the applicable rules of this Court. Officer McBride was a part-time officer and being trained by Officer Vinson when these injurious events occurred.

5.      Defendant Officers, John Does 1-5 are unidentified at this time but are believed to have participated at the initial illegal detention and arrest of Ms. Alford and/or participated after her abuse and subsequent incarceration with the release and viewing of her nude person as captured on the surveillance video and if identified may be served with process by lawfully affecting same where he may be found as authorized by law and the applicable rules of this Court.

## SYNOPSIS OF THE CASE

VIOLATIONS OF CONSTITUTIONAL PROTECTIONS AFFORDED. DAPHINE DOREENE ALFORD UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY THE INTENTIONAL ASSAULT AND ABUSE OF HER PERSON AND/OR BY THE FOURTEENTH AMENDMENT ALL BY AND THROUGH THE USE OF GROSSLY IMPROPER ACTIONS INCLUDING FALSE ARREST, FALSE IMPRISONMENT, PHYSICAL ABUSE AND INTENTIONAL INFLICTION OF EXTREME EMOTIONAL DISTRESS AND MENTAL ANGUISH AND OBJECTIVELY UNREASONABLE EXCESSIVE FORCE; RESULTING IN SIGNIFICANT SUFFERING, DEPRIVATIONS, PHYSICAL AND MENTAL ANGUISH AND INJURIES AND PERMANENT DISABILITY DIRECTLY CAUSED BY INDIVIDUAL OFFICERS ACTING UNDER THE AUTHORITY AND CONTROL OF THE DEFENDANT, THE CITY OF WIGGINS, MISSISSIPPI, ALL WHILE ACTING UNDER COLOR OF LAW IN ACCORDANCE WITH THE DEFENDANT CITY'S AND POLICE DEPARTMENT'S POLICIES, PROCEDURES, CUSTOMS, HABITS, AND PRACTICES.

1.      This is a Federal Civil Rights lawsuit, claim and action brought under 42 USC § 1983, § 1985 and § 1988 and under the protections, privileges and provisions afforded

the Plaintiff, DAPHINE DOREENE ALFORD, a person of color, and any similarly situated citizen under the Due Process Clause of the Fourth Amendment to the United States Constitution and/or the Fourteenth Amendment to the United States Constitution by the injurious use of unreasonable, abusive and excessive force,  false arrest, false felony charges and false imprisonment.

2.      The individual and/or combined actions of the City of Wiggins Police Department's Officers resulted in severe suffering and permanent physical and mental injury to DAPHINE DOREENE ALFORD.

3.      The actions of the City of Wiggins Police Department's Officers in improperly seizing, arresting, assaulting and abusing DAPHINE DOREENE ALFORD, by the excessive, unnecessary and unwarranted use of harmful, abusive and degrading force,  making a false arrest and filing false felony charges which severely injured and terrorized her, were intentional, objectively unreasonable, and *carried out in their official capacity while acting under color of law in accordance with the policies, procedures, practices, habits and customs* of the Defendant, the City of Wiggins.

4.      The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and filing false felony charges clearly evidence a habit, pattern and/or custom that *rises to the level of an official policy.*

5.      The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and

22

filing false felony charges clearly evidence a habit, pattern and/or custom of *improper hiring*.

6.      The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and filing false felony charges clearly evidence a habit, pattern and/or custom of *improper training*.

7.      The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and filing false felony charges clearly evidence a habit, pattern and/or custom of *improper supervision*.

8.      The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and filing false felony charges clearly evidence a habit, pattern and/or custom that evidences encouragement and/or approval and/or acquiescence and/or other similar actions or inactions *by the Chief of Police as to rise of the level of an approved policy by a policy making official.*

9.      The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and filing false felony charges clearly evidence a habit, pattern and/or custom that evidences

encouragement and/or approval and/or acquiescence and/or other similar actions or inactions *by the Mayor as to rise to the level of an approved policy by a policy making official.*

10.     The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force , making a false arrest and filing false felony charges clearly evidence a habit, pattern and/or custom that evidences encouragement and/or approval and/or acquiescence and/or other similar actions or inactions *by other elected or appointed officials as to rise to the level of an approved policy by a policy making official.*

11.     The policies, procedures, practices, habits and customs of the City of Wiggins Police Department in allowing its Officers to use unnecessary, unwarranted and objectively unreasonable excessive, injurious, abusive and degrading force, making a false arrest and filing false felony charges e *clearly evidence a habit, pattern and/or custom and a 'deliberate indifference'* by the Chief of Police and other elected or appointed officials as to rise of the level of an approved policy by a policy making official.

## VINSON AND MCBRIDE AND OTHER WIGGINS POLICE OFFICERS HAD ABUSED
## ANOTHER VULNERABLE PERSON BEFORE DAPHINE ALFORD

1.     Officers Vinson and McBride had recently participated, just a few days before they falsely arrested and assaulted Ms. Alford, in injuring and then dragging a convicted defendant, Jack Smith, Jr., a physically disabled and partially paralyzed man, out of the Municipal Court of Wiggins after the defendant and his sister had testified about his disability and against the officers who arrested him asserting the officers had been

24

'untruthful' and were "liars" and further had protested his conviction and asserted his desire to appeal.

2.      Once outside the courtroom, Officers Vinson and McBride and other Wiggins Officers 'manhandled' him, using unreasonable and excessive force, severely injuring him and resulting in permanent physical and mental disabilities.

3.      During the hallway assault on Mr. Smith, his cries of abject pain and agony could clearly be heard in the courtroom.

4.      After the assault, Mr. Smith was taken by ambulance for emergency medical treatment.

5.      Mr. Smith subsequently filed a formal complaint with the City of Wiggins and Police Department resulting in his and his family being harassed including attempts to defame and destroy the Smith Family including their local business of *Smith's Produce*.

6.      Mr. Smith subsequently filed a Federal Complaint concerning his abuse and injuries which is currently pending in the Federal District Court, Southern District, Southern Division styled: *Jack R. Smith, Jr. v. City of Wiggins, et al.* Cause No. 1:14cv26HSO-RHW.  As set forth earlier, Chief Barnett gave sworn testimony in that case which is relevant and material to this proceeding.

**CHIEF MATTHEW BARNETT FAILED TO TAKE REMEDIAL OR CORRECTIVE ACTION**

1.      Chief Barnett was a duly appointed policy making official in charge of the Wiggins Police Department, its Officers and personnel at the time of this event.

2.      Chief Barnett has testified that he is authorized to make official policy for the Wiggins Police Department subject to the authorization of the Mayor and City Council.

3.      Chief Barnett has testified that he was aware of the circumstances of what occurred involving Mr. Smith in both the courtroom and the hallway and had reviewed the video.

4.      Chief Barnett has testified that he did not discipline any officer involved as the officers were following proper police procedure.

5.      Chief Barnett has testified that he 'affirmed' the actions of his officers regarding Mr. Smith.

## CHIEF BARNETT APPROVED AND ENCOURAGED THE ACTIONS OF OFFICERS VINSON AND MCBRIDE AND OTHERS

1.      Chief Barnett, by *his failure to act, failure to investigate and/or failure to suspend* (with or without pay) Officers Vinson, McBride and other officers pending an investigation of Mr. Smith's injuries, approved and condoned the involved officers actions and thereby directly/indirectly encouraged similar future injurious actions against other vulnerable citizens.

2.      Chief Barnett, *by his failure to properly and timely act*, failed in his supervisory duties.

3.      Chief Barnett, *by his failure to properly and timely act,* improperly allowed, authorized and approved improper use of force and/or excessive use of abusive and injurious force on unresisting citizens.

4.      Chief Barnett, *by his failure to properly and timely act,* improperly allowed, authorized and approved improper use of force and/or excessive use of abusive and injurious force on disabled and otherwise vulnerable citizens.

26

5.      Chief Barnett, *by his failure to properly and timely* act, as a policy making official, allowed, authorized and approved such future similar actions.

6.      Chief Barnett, *by his failure to properly and timely act*, improperly allowed, authorized and approved Officers Vinson and McBride to be on duty a few nights later when they abused, assaulted and injured Ms. Alford.

7.      Chief Barnett, *by his failure to properly and timely act*, improperly allowed, authorized and approved a policy, procedure, practice, habit and/or custom of improper use of force, unnecessary and excessive use of force, and/or abusive actions towards unresisting and/or vulnerable individuals.

8.      Chief Barnett, *by his failure to properly and timely act*, improperly allowed, authorized and approved a policy, procedure, practice, habit and/or custom evidencing at a minimum a "deliberate indifference" concerning the constitutionally protected rights from excessive, abusive, injurious and related improper actions by his officers.

## WIGGINS POLICE DEPARTMENT HABIT, CUSTOM, PRACTICE OR POLICY OF EXCESSIVE FORCE AND ABUSE OF CITIZENS

1.   Chief Barnett, by his failure to properly and timely act, *improperly allowed and approved excessive use of abusive and injurious force on vulnerable and/or unresisting citizens.*

2.   Chief Barnett, prior to the assault on Ms. Alford, *was well aware of previous improper actions by members of the Wiggins Police Department.*

3.   Chief Barnett, prior to the assault on Ms. Alford, *had allowed a continuing pattern, habit, custom, practice, policy of citizen abuse  by members of the Wiggins Police Department.*

4.   Chief Barnett, by his actions/inactions, *created and/or approved actions affirmed an unofficial policy encouraging excessive and unwarranted interactions with citizens including unreasonable and excessive use of force.*

## WIGGINS POLICE DEPARTMENT'S COMMUNITY REPUTATION FOR ABUSE AND HARRASSMENT OF BLACK CITIZENS AND OTHERS

1.   The substantial majority of Wiggins Police Department Officers are Caucasian/White.

2.   Wiggins Police Officers have a well known community reputation for harassment of persons of color i.e., African-Americans, Blacks, mixed race and against white/Caucasian persons who are friends with, involved with, related to, inter-married with, etc. persons of color especially members of the African-American/Black Community.

3.   This harassment existed before and during Chief Barnett's tenure as Chief of Police.

4.   Members of the Board of Alderman, including Alderman Darrell Berry, have publically expressed concerns regarding this harassment during official meetings and that he was "familiar with the situation" regarding how the Wiggins Police Officers treat minorities.

5.   Citizens of Wiggins have publically and officially complained and given personal accounts of harassment to the elected officials of Wiggins and to the Chief of Police.

6.   Regardless, all of the elected and/or appointed officials of Wiggins, including Chief Barnett, failed to properly take investigative, disciplinary, supervisory, educational/training and/or actions regarding these complaints.

7. Rev. Leonard Galloway, pastor of the Bethlehem Baptist Church, has personally addressed the Mayor, Board of Alderman and Chief of Police Matt Barnett at various times

including before this incident and during a meeting on February 13, 2013, wherein he gave an account of being harassed and informed the Mayor and Board that "trouble was brewing" *based on past and continuing incidences of recurring abuse throughout the African-American/Black Community.*

8.   Rev. Tim Monroe, of the New Welcome Hill Baptist Church has also addressed the Mayor, Boards and Chief Barnett, concerning continuing and past incidences of recurring abuse (before and after this incident) throughout the African-American/Black Community and informed them of an incident where he was personally detained and harassed; of another incident where a young (Black) man was "simply walking home late at night" and stopped and harassed by white Wiggins Police Officers  and stated "I can go on and on (referring to similar incidences of harassment and abuse)...We want to stop it before something bad happens and something bad is going to happen."

9.   Prior to the incident involving Ms. Alford, numerous complaints had been made with Chief Barnett regarding harassment, abuse, false arrests and excessive police actions of all types against members of the African-American/Black Community and their friends.

10.  Chief Barnett, with delegated authority as a policy making official, failed to adequately address these numerous complaints and by failing to do so affirmed and condoned his officers repeated abusive actions and thereby created a habit, practice, procedure, custom amounting to unofficial policy.

### MAYOR MILES AND CHIEF MATTHEW BARNETT FAILED TO TAKE ACTION

1.     Mayor Les Miles was the duly elected Mayor of Wiggins, Mississippi at the time of these events and thus the Chief Executive Officer with policy making authority.

2.     Chief Barnett was a duly appointed and council approved policy making official in charge of the Wiggins Police Department, its Officers and personnel at the time of these events.

3.     Both Mayor Miles and Chief Barnett were personally and publically informed of the numerous allegations of abuse concerning minority citizens of Wiggins before and after this incident.

4.     Both failed to take any action of any significant nature to stop or even curtail these numerous and continuing abuses by the City's Police Officers.

5.     Their lack of action, both individually and combined, condoned and tacitly approved the unofficial policy of the Wiggins Police Officers over aggressive policing of the City's Minority Community.

## THEORY OF LIABILITY

1.     Under the specific circumstances described within herein, City of Wiggins Police Officers *used unnecessary and objectively unreasonable, unwarranted, excessive, injurious and abusive force* in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1983 resulting directly in gross and grievous physical and mental suffering and injuries to DAPHINE DOREENE ALFORD.

2.     Under the specific circumstances described within her Complaint, City of Wiggins Police Officers *used improper police procedures* in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1983 and 42 U.S.C. § 1985 resulting directly in gross and grievous physical and mental suffering and injuries to DAPHINE DOREENE ALFORD, an African-American and a member of the Black Race.

30

3.     Under the specific circumstances described within her Complaint, City of Wiggins Police Officers *improperly stopped, detained, falsely arrested and filed false criminal charges* in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1983 resulting directly in gross and grievous physical and mental suffering and injuries to DAPHINE DOREENE ALFORD.

4.     Under the specific circumstances described within her Complaint, City of Wiggins Police filed *false felony charges resulting in false incarceration and improper imprisonment* in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1983 resulting directly in gross and grievous physical and mental suffering and injuries to DAPHINE DOREENE ALFORD.

5.     Under the specific and general circumstances described within her Complaint, City of Wiggins Police Officers conspired to abuse minorities and then *used unnecessary and objectively unreasonable excessive, injurious and abusive force* in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1985 resulting directly in gross and grievous physical and mental suffering and injuries to DAPHINE DOREENE ALFORD, a person of color belonging to the African-American/Black Race.

6.     Under the specific circumstances described within her Complaint, City of Wiggins Police Officers *created extreme fear, emotional distress and mental anguish and abject terror* in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1983 resulting directly in gross and grievous physical and mental suffering and injuries to DAPHINE DOREENE ALFORD.

31

**EXCESSIVE AND IMPROPER USE OF FORCE ON DAPHINE ALFORD**

1.       The Defendants are liable, jointly and severally, for excessive use of objectively unreasonable force in that:

      a.   Their actions in assaulting and battering Ms. Alford by slamming her face first while handcuffed into the concrete sally port floor, choking her, kneeling on her face and head, man-handling her, forcibly stripping off her clothing, improper touching of her person and encouraging and/or spraying her with pepper-spray were willful and wanton;

      b.   Directed at Ms. Alford and intended to cause her harm;

      c.   Where of such a nature as to evoke outrage and revulsion in a civilized society;

      d.   Caused Ms. Alford to suffer severe fear, pain, injuries and disabilities, both physical and mental, as a direct result and;

      e.   Ms. Alford's severe injuries and disabilities, both physical and mental, were foreseeable from these intentional acts upon her.

2.       The Wiggins Police Officers, acting in accordance with their Police Department's policies, customs, procedures and habits (as set forth in detail throughout her Complaint and incorporated by reference fully herein) intentionally assaulted, battered and abused a woman because she was seen to be a vulnerable minority and/or an African-American woman.

3.       The Wiggins Police Officers were well aware that their abusive actions, by 'manhandling' and then abusing and assaulting Ms. Alford in the manner as described in detail throughout this Complaint would cause severe physical and psychological pain,

injury, suffering, terror, mental anguish and resultant emotional distress and mental anguish and related injuries.

4.      The assault and battering of Ms. Alford caused the following physical and painful injuries:

      a.   Cuts and abrasions.

      b.   Damaged and chipped teeth.

      c.   Damaged lips.

      d.   Swollen face.

      e.   Concussion.

      f.   Contusions.

      g.   Blurred vision.

      h.   Bruising of her neck.

      i.   Bruising of her body.

      j.   Intense and painful burning of her eyes, mouth, nose, face and body.

      k.   Disfigurement.

5.      Directly related to the objectively unreasonable and excessive use of force and the injurious assault and battering at the hands of the City of Wiggins Police Officers as set forth in her Complaint, Ms. Alford has been diagnosed with, and suffers from Post Traumatic Stress Disorder and Severe Depression.

6.      Directly related to the objectively unreasonable and excessive use of force and the injurious assault and battering at the hands of the City of Wiggins Police Officers as set forth in her Complaint, Ms. Alford suffers from debilitating mental, emotional and psychological injuries.

7.     Directly related to the objectively unreasonable and excessive use of force and the injurious assault and battering at the hands of the City of Wiggins Police Officers as set forth in her Complaint, Ms. Alford continues to suffer the painful and disabling effects of the traumatic assault upon her.

8.     The assault upon her was conducted by on-duty Wiggins Police Officers acting 'under color of law.'

9.     The assault upon her was conducted in accordance with the policy, procedure, habit, practice or custom of the Wiggins Police Department and/or;

10.    The assault upon her was in accordance with an unofficial policy and/or approval of similar and/or related actions by a policy making official, Chief Matt Barnett.

11.    The assault upon her evidenced "deliberate indifference" in accordance with the policy, procedure, habit, practice or customs of the Wiggins Police Department.

12.    The assault upon her was not in good faith and objectively reasonable.

## EMOTIONAL DISTRESS AND MENTAL ANGUISH

1.     The Defendants are liable, jointly and severable, for the violation of Ms. Alford's federally protected civil rights causing her severe Emotional Distress and Mental Anguish in that:

     a.   Their actions in assaulting and battering Ms. Alford were willful and wanton;

     b.   Directed at Ms. Alford and intended to cause her harm;

     c.   Where of such a nature as to evoke outrage and revulsion in a civilized society;

      d.   Caused Ms. Alford to suffer severe emotional distress and mental anguish and resultant mental anguish in the form of Post Traumatic Stress Disorder and severe depression and/or related conditions as a direct result and

      e.   Ms. Alford's emotional distress and mental anguish was foreseeable from these intentional acts upon her.

2.     The Wiggins Police Officers, were well aware that their abusive actions, both inside and outside of the Stone County Correctional Facility, by 'manhandling' and then abusing and assaulting an unresisting African-American woman would cause severe mental anguish and resultant emotional distress and mental anguish.

3.     The assault and battering of Ms. Alford caused the following painful, psychological, emotional and mental anguish and injuries, disabilities and suffering:

      a.   Severe fear and terror of being completely vulnerable;

      b.   Fear and terror of being sexually abused and assaulted;

      c.   Fear and mistrust of law enforcement/authority;

      d.   Fear and mistrust of being with white men;

      e.   Humiliation and embarrassment;

      f.   Personal degradation;

      g.   Emotional dysfunction;

      h.   Mental Anguish;

      i.   Nightmares and flashbacks.

      j.   Psychological disability.

4.     The assault upon her was conducted by on-duty Wiggins Police Officers acting 'under color of law.'

5.     The physical assault upon her evidenced "deliberate indifference" and was in accordance with the policy, habit, practice or customs of the Wiggins Police Department of allowing abusive and excessive force.

6.     After Ms. Alford, complained of her inhumane treatment and/or her legal counsel formally notified the City of Wiggins of her abuse by its Police Officers; officers, agents and others acting directly on behalf of and otherwise aiding and abetting these Officers and the Police Department and/or City of Wiggins, began to harass and attempt to intimidate Ms. Alford by falsely providing information in her neighborhood and community that she was a "snitch" and/or similar words to that effect and otherwise cooperating with police against local drug dealers, users, etc.

7.     This continued harassment of her exacerbated and otherwise intensified the symptoms of Post Traumatic Stress Disorder and depression that Ms. Alford was already experiencing.

8.     This continued and deliberate harassment to discredit and intimidate her created an atmosphere of fear in her previous 'safe' community.

9.     This continued and deliberate harassment led to Ms. Alford having to leave town.

### ILLEGAL STOP AND SEARCH, FALSE ARREST AND FALSE IMPRISONMENT

1.     Defendants are liable for the violation of Ms. Alford's federally protected civil rights in that they committed an Illegal Stop and Search, False Arrest, False Imprisonment and for filing False Criminal Charges in that Defendant Officers Vinson and

McBride, (with complete knowledge and support of their supervisors, including a policy making official, Defendant Chief of Police Matt Barnett)  acted in reckless disregard and deliberate indifference for the civil rights and attendant afforded federal protections of Daphine Doreene Alford, who was not engaged in criminal conduct at the time these injuries were committed, with willful and wanton conduct by initiating an unlawful and abusive search of her person without reasonable suspicion and subsequent false arrest without probable cause and then maliciously filing false felony and misdemeanor criminal charges against Ms. Alford without  any justifiable and/or probable cause under the following facts:

      a. Ms. Alford was not acting suspiciously or observed committing a criminal act when first detained and questioned by Officers Vinson and McBride;

      b. Ms. Alford was not a 'Wanted' person, was not a suspect involved in a crime and there was no arrest warrant for her;

      c. Officers Vinson and/or McBride had no lawful authority to stop, question or search without 'reasonable suspicion' based on articuable facts and therefore conducted an illegal, improper and abusive search of her;

      d. Ms. Alford, an African-American/Black woman, was physically and improperly searched by a Caucasian/white male officer;

      e. Officers Vinson and/or McBride falsely 'alleged' they found narcotic paraphernalia;

      f. Officers Vinson and/or McBride falsely 'alleged' that Ms. Alford was publically intoxicated, disorderly and attempted to assault them;

2.     Officers Vinson and/or McBride then 'manhandled' her into the backseat of their patrol car, took Ms. Alford to the Stone County Correctional Facility where they physically, psychologically, emotionally and mentally abused her with injurious force including body slamming her face-first into a concrete walkway, forcing her down onto the jail floor and choking her, dragging her into a jail cell, forcibly stripping off all her clothes and then encouraging spraying her nude person with pepper spray, forcing her to use filthy toilet water from the used and dirty cell commode to attempt to decontaminate herself and alleviate the painful burning and suffering she was experiencing.

3.     After Ms. Alford was left naked and while painful, psychologically and emotionally suffering from their assaults upon her, Officers Vinson and McBride filled out police reports and related paperwork creating false criminal charges against her.

4.     Officers Vinson and McBride included the patently false felony charges of assaulting a police officer when it was they who assaulted her.

5.     Officers Vinson and McBride continued to sponsor these charges through the initial phases of the criminal justice system resulting in Ms. Alford remaining incarcerated under a high dollar amount bond making it virtually impossible for her to obtain her release.

6.     Ms. Alford remained incarcerated from the date of her false arrest and filing of these false felony charges by these officers until thirty-three days later when she was finally able to obtain her release from her false imprisonment by alerting Stone County Officials of what had been done to her.

## PUBLIC HUMILIATION AND EMBARASSMENT

1.      Based upon credible information and good faith belief, these Defendants and/or other unidentified members of the Wiggins Police Department obtained a copy of the Stone County Correctional Facility video of Ms. Alford when she was nude and assaulted in the jail cell concerning which an unknown number of officers are believed to have viewed it and therefore seen Ms. Alford without her clothing on and her nude person.

2.      No permission was obtained from Ms. Alford to view her nude.

3.      No legitimate permission was obtained from other lawful authority authorizing their abusive actions of humiliating and embarrassing Ms. Alford by seeing her nude person.

## DAMAGES AND EXTENT OF HER INJURIES

1.      Ms. Alford suffered painful, significant, debilitating and disfiguring physical injury to her head, face, front teeth and body when she was viciously pushed from behind and tripped, while handcuffed with both hands behind her back, resulting in severe head/face first and bodily impact into a concrete floor.

2.      Ms. Alford suffered painful, significant, severe, debilitating physical injury, psychological and emotional trauma, terror, extreme stress, shock and mental anguish and injuries when she was viciously pushed from behind and tripped, while handcuffed with both hands behind her back, resulting in traumatic head first and bodily impact into the concrete floor.

3.      Ms. Alford suffered painful, significant, severe, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was pushed by Officer Vinson down onto the floor of the Stone County

39

Correctional Facility and maliciously choked and then yanked to her feet in a vicious manner while still being choked by him.

4.     Ms. Alford suffered painful, significant, severe, debilitating physical injury, psychological and emotional trauma, terror, extreme stress, shock and mental anguish and injuries, humiliation and degradation when her outer clothing was forcibly stripped from her body.

5.     Ms. Alford suffered painful, significant, severe, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries, degradation and humiliation when her underclothing was forcibly stripped from her body.

6.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was forcibly held down on a cold concrete floor while completely nude and vulnerable with Officer Vinson's knee on her head/jaw/face.

7.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was forcibly held down on a cold concrete floor while completely nude and vulnerable while not knowing the ultimate intentions of the officer holding her down.

8.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was forcibly held down on a cold concrete floor while completely nude and vulnerable while not knowing the ultimate intentions of the officer holding her down while wearing surgical style latex gloves and improperly touched her.

40

9.      Ms. Alford suffered painful, significant, debilitating physical, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries and gross embarrassment and abject humiliation when she was completely nude and vulnerable while being viewed by numerous white police and corrections officers.

10.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was pepper sprayed while nude.

11.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was pepper sprayed while nude and then not decontaminated and/or offered other medical care.

12.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries when she was pepper sprayed while nude, not decontaminated and/or offered other medical care, and then locked up in a small holding cell.

13.     Ms. Alford suffered painful, significant, debilitating physical injury, psychological and emotional trauma, terror, extreme stress and mental anguish and injuries and abject humiliation when she was forced to wash her face with contaminated toilet water from the inside of a used dirty cell commode.

14.     Ms. Alford suffered painful, significant, debilitating physical, psychological and emotional trauma, terror, extreme stress, mental anguish, and abject degradation and humiliation when she was observed nude and naked by numerous individuals.

41

15.     Ms. Alford suffered painful, significant, debilitating physical, psychological and emotional trauma, terror, extreme stress and mental anguish and humiliation and degradation when was falsely charged with crimes and wrongfully incarcerated and imprisoned losing her freedom for thirty-three (33) days.

16.     Ms. Alford suffered painful, significant, debilitating physical, psychological and emotional trauma and abject humiliation, degradation and embarrassment when the video of her nude and naked person was shown to an unknown number of Wiggins Police Officers.

17.     Ms. Alford suffered painful, significant, debilitating physical, psychological and emotional trauma, terror, extreme stress, mental anguish, defamation, degradation and public humiliation when she was forced to appear in public in 'jail clothes', handcuffed and wearing shackles to answer the false charges against her.

18.     Ms. Alford suffered painful, significant, debilitating physical, psychological and emotional trauma, mental anguish, fear for her safety and public defamation and humiliation with the intentional lies told about her within her community.

19.     Ms. Alford suffered the loss companionship of a boy friend, friends, and community when forced to move due to the slander and intentional lies told about her within her community.

20.     Ms. Alford suffered the loss of employment and income when forced to move due to the defamation, slander and intentional lies told about her within her community.

21.     Because of the injuries listed above and the events described concerning her in this Complaint, Ms. Alford suffers from debilitating and disabling Post-Traumatic Stress

Disorder, mental anguish and related emotional, psychological and consequential mental, emotional, social and functional disabilities.

## CONCLUSION

1.     Daphine Alford, an African American/Black woman, simply talking to a friend on the street corner of a small southern town at night was suddenly seized and confronted by two aggressive white male officers who abruptly arrested her, roughly and improperly frisked her and claimed she had narcotic paraphernalia while being drunk and disorderly. She was handcuffed and taken by two White Wiggins officers, Vinson and McBride, to jail at the Stone County Correctional Facility where she was maliciously abused and physically assaulted.

2.     While walking handcuffed into the jail, she was body slammed head first into a concrete floor causing a concussion and with a mouth full of blood was roughly man-handled into the jail, forced to the floor and choked.  Then she forced into a small jail cell where one officer held her down and forcibly stripped off her clothing.  Lying under him, on the cold hard concrete cell floor with her head painfully pinned down by Officer Vinson's knee, she suffered the extreme terror and psychological fear of ultimate vulnerability of being violated in a frightening, degrading, demeaning and painful manner.  While nude, Ms. Alford was sprayed point blank with pepper spray resulting in extreme pain and suffering. When the officers did not decontaminate her but instead left her nude in a small holding cell; she was forced to use filthy toilet water to alleviate the painful burning in her eyes, nose and mouth and on her exposed body.

3.     As she lay there naked, nude, humiliated, degraded, dehumanized, bleeding and still suffering painful burning, the two white Wiggins officers who did this to her, who

43

could clearly hear her still gagging and moaning, laughed and joked while concocting patently false felony charges against her claiming Ms. Alford had assaulted them.

4.      These felony charges resulted in Ms. Alford being falsely imprisoned for over thirty (30) days and suffer the punishments, deprivations, degradations and humiliations of an incarcerated inmate.

5.      Not discounting her loss of freedom and personal deprivations for over a month and the ultimate humiliation, psychological degradation, embarrassment, humiliation, extreme fear and abject terror she suffered that night, Ms. Alford now must relieve those horrors as she suffers from debilitating Post Traumatic Stress Disorder and resultant depression requiring future medical care and treatment.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, DAPHINE DOREENE ALFORD, respectfully requests that a timely jury trial be granted to present the abundant evidence and eye-witnesses testimony concerning the objectively unreasonable injurious use of excessive, degrading, humiliating and abusive force by the Defendant City of Wiggins Police Officers against her as part of a practice, habit, pattern and custom of the Wiggins Police Department allowing excessive and abusive force and the sponsoring of false criminal charges as approved and condoned by the Chief of Police Matt Barnett and the Mayor Les Miles and at the conclusion of the requested trial that this Honorable Court enter a judgment as follows:

## COMPENSATORY DAMAGES

1.      Against the Defendant City of Wiggins and all individual Defendants, both jointly and severally, according to the proof presented, in an award for all actual and compensatory damages, including: physical injury, pain and suffering, disfigurement, psychological injury,  mental anguish and related suffering and emotional distress and mental anguish; gross humiliation, degradation and emotional pain; loss of companionship; economic injuries and loss; pain and suffering, resultant physical, psychological and mental impairments and disabilities; medical and related care; all injuries, impairments, disabilities, pain, suffering and loss, of whatever related and relevant type or nature- past, present and future, sustained and will be sustained by the Plaintiff, DAPHINE DOREENE ALFORD specifically including damages for:

        a.      False Detention and Arrest;

        b.      Excessive Use of Force;

        c.      Improper and Forcible Disrobing;

        d.      Improper Touching;

        e.      Humiliation and Degradation;

        f.      False Imprisonment and Incarceration;

        g.      False Criminal Charges;

        h.      Defamation.

2.      Against the Defendant City of Wiggins, and all individual Defendants, both jointly and severally, for all Plaintiff's reasonable attorney's fees pursuant to 42 USC § 1988 and all associated allowable costs, related litigation expenses and recoverable expert witness fees.

**PUNITIVE DAMAGES**

1.     Against each separate and individual Defendant (excluding the City of Wiggins) for Punitive Damages in an amount to be determined by the extent of their intentionally harmful actions, personal participation and individual culpability and that such conduct was malicious, intentional, or recklessly or callously indifferent to the protected rights of Ms. Alford and to punish them individually and to deter such future abuses by these Defendants and others.

**SPECIFIC DEMAND FOR ATTORNEY'S FEES AND ALL COSTS**

1.   Against the Defendant City of Wiggins for all Plaintiff's reasonable attorney's fees, pursuant to 42 USC § 1988 including;

2.   All associated allowable costs, related litigation expenses and recoverable expert witness fees.

**OTHER REQUESTED RELIEF**

1.   Against all the Defendants for this and other such relief as this Honorable Court may deem necessary, appropriate, equitable and just under the circumstances of this action.

Respectfully Submitted, this the 20th day of January, 2016

DAPHINE DOREENE ALFORD
By and Through Her Counsel

By: _____

James Bailey Halliday
Attorney for Plaintiff
MS Bar No. 2924
12257 Suite B Ashley Drive
Gulfport, MS 39503
(228) 868-5421 (O)
(228) 539-9553 (F)
jhallidayesq@cableone.net