## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**DAPHINE DOREENE ALFORD**                                              **PLAINTIFF**

**v.**                                                       **CAUSE NO. 1:16CV19-LG-RHW**

**THE CITY OF WIGGINS, MS;**
**MAYOR JOEL T. MILES; CHIEF OF POLICE**
**MATT BARNETT; POLICE OFFICERS**
**RANDY VINSON, DOUGLAS MCBRIDE,**
**and OFFICERS JOHN DOES 1-5,**
**Individually and in their official capacities**                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [61] Motion for Summary Judgment filed by the

City of Wiggins, Mississippi; Mayor Joel T. Miles and Chief of Police Matt Barnett in

their official and individual capacities; and Wiggins Police Officers Randy Vinson and

Douglas McBride in their official capacities (collectively, the "City"). Plaintiff Alford

was granted an extension of time to file a response, but she did not do so within the

time allowed. After due consideration of the City's submissions and the relevant law,

it is the Court's opinion that the City has shown the lack of a genuine issue of

material fact for the jury. The City's Motion will be granted.

### BACKGROUND

This case arises out of events occurring in the late evening of January 24, 2013.

Alford, a black female, alleges that on that night she was standing on a street corner

in Wiggins, Mississippi, conversing with her male companion.  She alleges she was arrested by Wiggins Police Officers Randy Vinson and Douglas McBride, both white, even though "[s]he was not a suspect, not acting suspiciously and was not observed committing any criminal act."  (Compl. 10, ECF No. 1).  After her arrest, she was "crudely, improperly and illegally searched," whereupon the officers found "narcotic paraphernalia."  (*Id.*).  She was then "roughly manhandled," handcuffed and forced into the police vehicle for transport to the Stone County Correctional Facility.  (*Id.* at 11).

Upon reaching the Correctional Facility, Alford alleges that Officer Vinson "intentionally tripped and twisted her off-balance causing her to unexpectedly fall forward, face first, directly into the pavement with the blunt impact injuring her head, face, teeth and body."  (*Id.*).  She alleges that Vinson and McBride dragged her into the Correctional Facility while she loudly cried out from the intense pain.  (*Id.*).

Inside the Correctional Facility, Alford alleges she was manhandled into a small jail cell, where she was forced to the floor.  She alleges Vinson kneeled on her face, jaw, and neck to keep her down as she was stripped naked.  She alleges that Vinson touched her inappropriately while "the other Wiggins officer watched."  (*Id.*). Officer Vinson, who had moved to a different area, returned to the area of the cell,

> where Ms. Alford was protesting what they had done to her.  When [Alford] saw Officer Vinson staring at her she became completely

> emotionally overcome and outraged by what he had just done to her.  A
> Corrections Officer then sprayed pepper spray . . . in [Alford's] face and
> body even though she was nude, required medical attention for her
> injuries and was not a threat to anyone.

(*Id.* at 13).

Alford alleges she was only able to wash the pepper spray from her body using "a dirty cell commode's unsanitary toilet water." (*Id.*).  Her pleas for help and assistance were ignored by "the two Wiggins Officers" while they were nearby writing up false criminal charges against her.  (*Id.*).

Alford's claims are pursuant to 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force, and false arrest, detention, imprisonment, and prosecution.  (*Id.* at 30-31).  Additionally, she alleges a conspiracy to abuse minorities pursuant to 42 U.S.C. § 1985.  (*Id.* at 31).  She may also have alleged state law torts.  The City moves for summary judgment on all of these claims.

In support of its Motion, the City provided a declaration from Chief of Police Matt Barnett.  (City Mot. Ex. D, ECF No. 61-4).  Barnett states that the Wiggins Board of Aldermen makes policy for the City.  The City had a written policy on the use of force, which required police officers use the appropriate amount of force necessary dependent on the circumstances.  (*Id.* at 2 (¶7); Def. Mot. Ex. C, ECF No. 61-3).  The City's written arrest policy "requires officers to act constitutionally and the existence of probable cause to effectuate an arrest."  (*Id.*; Def. Mot. Ex. E, ECF No. 61-5).  In regard to the incident in question here, Barnett states he was not involved

and had no knowledge of it until after it had occurred.  (*Id.* at 1 (¶3)).  Barnett

determined that McBride and Vinson had violated City policy by being present during

the strip search and holding Alford in place while two female correctional officers

removed her clothing.  (*Id.* (¶4)).  As a result, McBride resigned and Vinson was

terminated.  (*Id.*).

Additionally, the City provided deposition testimony from Alford.  (City Mot.

Ex. A, ECF No. 61-1).  Although there is a thorough discussion of all of the events of

the night in question, Alford's testimony does not address a City policy of any kind.

She testified that she has no knowledge of the police department's policies or the

training of the officers.  (City Mot. Ex. A 165-66, ECF No. 61-1).  Further, she had

only knowledge of rumors that police officers had "beat somebody up that same night

or a couple of days before that or something."   (*Id.* at 158-59).

THE LEGAL STANDARD

Summary judgment is mandated against the party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case and on which that party has the burden of proof at trial.  Fed. R. Civ. P. 56(e);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual controversies are resolved

in favor of the nonmoving party, but only when there is an actual controversy; that is,

when both parties have submitted evidence of contradictory facts.  *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  The plaintiff has not submitted any

argument or evidence in opposition to the defendants' Motion.  Nevertheless, the

defendants have the burden of establishing the absence of a genuine issue of material fact and, unless they have done so, the Court may not grant the Motion, regardless of whether any response was filed. *Hibernia Nat'l. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

DISCUSSION

I. <u>Municipal Liability Under 42 U.S.C. § 1983</u>

Title 42 U.S.C. § 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). In order to establish the City's liability under § 1983, Alford must show the deprivation of a federally protected right caused by action taken "pursuant to an official [ ] policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Alford does not plead the existence of a written policy regarding wrongful

-5-

arrest, detention, and/or excessive force against black citizens, but one that has become pervasive, and that the City has condoned and encouraged. Official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

"It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson*, 588 F.3d at 850-51 (quoting *Piotrowski*, 237 F.3d at 582). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). A plaintiff seeking to withstand summary judgment must provide sufficient evidence "to provide context that would show a pattern of establishing a municipal policy." *Id.* at 851.

Alford's Complaint includes a lengthy preamble in which she charges that

[t]he City of Wiggins Police Department is almost all white. The Wiggins Police Department has a well-known community reputation of racial bias, animus and abusive actions towards minorities that has existed for years. This racial bias, animus and abuse extends to any "person of color," especially African-Americans or other persons considered black, and even to any white person who may be friends of, have a relationship with, or be related to any person of color. This bias, animus and abuse also extend [sic] to anyone who might otherwise be in

a minority status including persons mentally and/or physically
handicapped or disabled.

(Compl. 2, ECF No. 1). Alford then describes two instances where she alleges racial

bias played a part in the City's actions. The first is titled "Assault of a Disabled and

Partially Paralyzed White Man With Interracially Married Family." (*Id.* at 3). Alford

describes an instance where a white man who had just been convicted was dragged

out of the Wiggins Municipal Court by three Wiggins Police Officers and assaulted in

the hall.[1] The man's sister was married to a "man of African-American ancestry."

(*Id.* at 4). The second is titled "Assault of Disabled White Woman Stopped in Black

Section of Town" and describes the arrest of a white woman for driving while

intoxicated. (*Id.* at 5). She was reportedly "roughed up" by a number of white

Wiggins officers, and later assaulted by an officer at the Stone County Correctional

Facility. (*Id.*).

Despite Alford's general allegations of abusive actions by the City against

black citizens, and her assertion that "Black Lives Matter But Not in Wiggins,

Mississippi," (*Id.* at 7), Alford does not allege any specific instance where a black

citizen was wrongfully arrested, detained, charged or abused by the City. She has

alleged one somewhat factually similar instance of excessive force during an arrest

and detention, but she has provided no competent summary judgment evidence of any

incident. Without some evidence of any other similar actions, there cannot be

---

[1] From later allegations, it appears that the man Alford refers to in this
section is Jack R. Smith, who pursued legal action against the City in this Court in
*Smith v. City of Wiggins, et al.*, No. 1:14cv26-HSO-RHW (S.D. Miss. Jan. 24, 2014).

sufficient evidence to establish a municipal policy. "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Alford does not provides any evidence that the City had a pattern or practice of using excessive force during an arrest or detention, or a pattern or wrongfully arresting or prosecuting citizens. The City's evidence shows instead that Alford will not be able to establish an unconstitutional policy that could be a basis for imposing municipal liability against the City under § 1983. Accordingly, the City and its officials and employees in their official capacities are entitled to summary judgment.

## II.  Individual Liability Under § 1983

The City argues that it is entitled to dismissal of the claims against Mayor Joel Miles and Chief of Police Matt Barnett in their individual capacities. Alford testified that neither Miles nor Barnett had any personal involvement in the incident, but the officers were under Barnett's command, and she "just wanted everybody that was involved – I mean, everybody that, you know, could have avoided this incident" to be named in her lawsuit. (City Mot. Ex. A 157-58, ECF No. 61-1).

There is no vicarious or respondeat superior liability of supervisors under § 1983. *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). The supervisor must either be personally involved in the violation or otherwise have caused the violation. *Id.* Since Miles and Barnett were only involved because of their supervisory or policy-

making roles in the City, any § 1983 claim against them in their individual capacities should be dismissed.

III. 42 U.S.C. § 1985

Alford mentions 42 U.S.C. § 1985 in her Complaint.  (*See* Compl. at 9, 31). This section prohibits, among other things, conspiracies to deprive any person equal protection of the laws.  42 U.S.C. § 1985(3).  However, Alford does not develop a conspiracy claim in her allegations.  To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States.  *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)).  Additionally, the conspiracy must also have a racially based animus.  *Id*.

If Alford intended to bring a claim under § 1985(3), she must identify a conspiracy involving two or more persons.  *Hilliard*, 30 F.3d at 653.  The named defendants in this case are officials and employees of the City of Wiggins.  The City and its officials, agents, and employees constitute a single legal entity which cannot conspire with itself for purposes of § 1985(3) under the intracorporate conspiracy doctrine.  *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998); *Hilliard*, 30 F.3d at 653.  Additionally, there are no factual allegations establishing a conspiracy, nor does Alford provide evidence of a conspiracy.  For these reasons, Alford's § 1985(3) claim should be dismissed.

IV.  State Law Claims

In the event that Alford has alleged state law tort claims against the City, the City argues that any such claims are intentional tort claims and, therefore, are procedurally barred.  The City argues that Alford had until January 24, 2014, one year after the incident, to file suit based on any alleged intentional tort committed by any defendant.  Miss. Code Ann. § 15-1-35; *Gilmer v. Trowbridge*, No. 3:08cv136-TSL-JCS, 2009 WL 4113711, at *3-4 (S.D. Miss. Nov. 23, 2009) (to the extent intentional torts fall outside of the MTCA, the applicable statute of limitations is the one-year period in Miss. Code Ann. § 15-1-35); *McBroom v. Payne*, No. 1:06cv1222-LG-JMR, 2010 WL 3942010, at *9 (S.D. Miss. Oct. 6, 2010) (explaining that battery, assault, and intentional infliction of emotional distress claims "cannot be considered 'within the course and scope of employment' under the [MTCA]").  Alford's Complaint was filed January 20, 2016, and therefore any intentional tort claim is untimely.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [61] Motion for Summary Judgment filed by the City is **GRANTED**.  Plaintiff's claims against the City of Wiggins, Mississippi; Mayor Joel T. Miles and Chief of Police Matt Barnett in their official and individual capacities; and Wiggins Police Officers Randy Vinson and Douglas McBride in their official capacities are **DISMISSED.**

**SO ORDERED AND ADJUDGED** this the 8th day of March, 2017.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE